IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LUCID HEALTH, INC.,** :  :  Plaintiff/Counter-Defendant, :  : v. :  : **PREMIER IMAGING VENTURES, LLC,** :  :  :  Defendant/Counter-Plaintiff. : | Case No. 2:20-cv-01055  JUDGE ALGENON L. MARBLEY  Magistrate Judge Jolson |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiff/Counter-Defendant Lucid Health, Inc.'s Partial Motion to Dismiss.  Doc. 12.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Lucid Health's Motion [#12].

### II. BACKGROUND

Lucid Health initiated this trademark infringement action on February 26, 2020, alleging Defendant/Counter-Plaintiff Premier Imaging Ventures, LLC used a mark in commerce that was confusingly similar to Lucid Health's "LUCID HEALTH and Design" and "LUCID HEALTH" marks.  Lucid Health registered the "LUCID HEALTH and Design" mark with the United States Patent and Trademark Office on October 13, 2009.  Lucid Health is in the process of registering the "LUCID HEALTH" mark.  That application has been pending since January 20, 2020.

On March 23, 2020, Premier Imaging filed an Answer and Counterclaims against Lucid Health, raising three causes of action: (Count I) Declaratory Judgment of Non-Infringement and No Unfair Competition; (Count II) Declaratory Judgment of Invalidity and Partial or Complete

1

Cancellation of Lucid Health's Registered Trademark; and (Count III) Declaratory Judgment of Invalidity of Lucid Health's Pending Trademark Application.  Lucid Health has moved to dismiss Counts II and III of Premier Imaging's Counterclaims for a failure to state a claim upon which relief can be granted.  Alternatively, Lucid Health moves to dismiss Count III for lack of subject-matter jurisdiction.  Finally, Lucid Health asks the Court to strike three of Premier Imaging's Affirmative Defenses because they fail to comply with the *Twombly/Iqbal* pleading standard and fail to allege fraud with particularity.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides for the dismissal of a complaint for, among other things, lack of subject-matter jurisdiction and a failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1) & (6).  To survive a motion to dismiss for a failure to state a claim, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## IV. ANALYSIS

### A.  Whether Premier Imaging has Pled Cognizable Claims in Counts II and III

Lucid Health moves for the dismissal of Counts II and III of Premier Imaging's Counterclaims for a failure to state a claim upon which relief can be granted.  Specifically, Lucid Health asserts that Premier Imaging did not properly plead facts establishing Lucid Health abandoned use of its marks or committed fraud in its applications to the USPTO, such as to warrant their cancellation under 15 U.S.C. § 1064.

Section 1064(3) provides that a petition to cancel a registration of a mark may be filed at any time if "the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently[.]"  15 U.S.C. § 1064(3).  Abandonment occurs when use of a mark "has been discontinued with the intent not to resume such use."  15 U.S.C. § 1127; *see Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575-76 (6th Cir. 2000) ("In order for a party to succeed on a claim of abandonment, it must prove the elements of both non-use and intent, *i.e.,* that the other party actually abandoned its mark through non-use and that it intended to do so.").  Upon such a finding, the Court may "order the cancelation of registrations, in whole or in part[.]"  15 U.S.C. § 1119.

Here, Premier Imaging has adequately pled a claim for abandonment.  In paragraph one of the Counterclaims, Premier Imaging avers that this is an action for the cancellation (in whole or in part) of Lucid Health's registered trademark on the ground that the mark has been "discontinued and abandoned with respect to at least some of the registration's listed services for unexcused non-use with no intent to continue such services."  Doc. 7 at 16.  Later, the pleading asserts that, among other things, Lucid Health "terminated use of the Lucid Health and Design mark for at least the Discontinued Services [] prior to the filing date of the Renewal Application on October 14, 2018"

and that Lucid Health "misstated its services on its USPTO filings related to U.S. Reg. No. 3,695,458, including on its initial application filed March 24, 2009 and on its Section 8 affidavits filed on November 6, 2014 and October 14, 2018 respectively, by describing services that it did not provide in connection with the Lucid Health mark." *Id.* at 28. The pleading then goes on to identify the services that Lucid Health listed in its application to the USPTO but never actually provided or no longer provides in connection with its trademarks:

> Advertising and marketing; Advertising and marketing services, namely, promoting the goods and services of others; Advertising services, public relations and marketing services, namely, promoting and marketing the goods and services of others through all public communication means; Branding services, namely, consulting, development, management and marketing of brands for businesses; Business advice and analysis of markets; Business consultation and management regarding marketing activities and launching of new products; Business marketing services; Development of marketing strategies and concepts; Marketing and branding services, namely, performing consumer insight and brand strategy of company logos; Marketing consultation in the field of health related market research; Marketing consulting; Marketing services, namely consumer marketing research; Promotion and marketing services and related consulting; Promotional marketing and representation services for sales to the public sector; Providing advertising, marketing and promotional services for the pharmaceutical and medical industry; Providing advertising, marketing and promotional services for the pharmaceutical and medical products of others; Providing business marketing information; Statistical evaluations of marketing data; Business management and consulting services for the health care industry, namely, customer service, accounting services, and web-based advertising and marketing services; Business marketing consulting services; and Business consultation services in the field of health care, biotechnology, pharmaceuticals, medical devices, healthcare technology, and health-related risk mitigation products and services (the "Discontinued Services").

*Id.* at 30-31. Accepting these allegations as true, Premier Imaging has pled facts from which the Court can reasonably infer that Lucid Health abandoned particular uses of its "LUCID HEALTH and Design" trademark with no intent to resume such use, given that it had never provided some of these services over the course of ten-plus years. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) ("To prove abandonment, a party must demonstrate both non-use and intent not to resume use.").

4

Alternatively, Premier Imaging proceeds under a theory of fraud. Fraud in this context occurs when a trademark applicant knowingly "makes false, material misrepresentations to the USPTO with the intent to deceive." *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1110 (S.D. Ohio 2011). Under Federal Rule of Civil Procedure 9(b), a heightened pleading standard generally applies to fraud-based claims, requiring the claimant to "allege the time, place, and content of the alleged misrepresentation as well as the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Oatly AB v. D's Naturals LLC*, 2018 WL 3496386, at *3 (S.D. Ohio July 20, 2018) (quoting *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal quotations omitted).

Here, Premier Imaging fails to allege any facts from which the Court can reasonably infer that Lucid Health made material misrepresentations in its trademark applications with the intent to deceive the USPTO. Nor does Premier Imaging identify a fraudulent scheme underlying Lucid Health's alleged misrepresentations. Rather, Premier Imaging merely asserts that Lucid Health made several misstatements "with the intent to deceive." *See* Doc. 7 at 29, 32, 33. These conclusory accusations, however, do not suffice to meet the heightened pleading requirements under Rule 9(b). *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) ("Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b).").

Recognizing this, Premier Imaging attempts to remedy the deficiency in its pleading by way of its response to Lucid Health's Motion to Dismiss. But Premier Imaging cannot amend its Counterclaims through a brief in opposition to a motion to dismiss. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, the fraudulent scheme

5

Premier Imaging proffers -- that Lucid Health filed trademark applications with the USPTO using false claims to prevent Premier Imaging from using its own trademark rights -- is implausible. Lucid Health first filed for and acquired trademark protection back in October 2009. Premier Imaging, on the other hand, did not file for its own trademark protection until March 2018, nearly nine years later. *See* Doc. 7 at 21. Critically, Premier Imaging has not provided any facts suggesting Lucid Health was aware of Premier Imaging back in 2009, or that Lucid Health could have anticipated Premier Imaging would file for trademark protection of a similar mark nine years later.[1] *Cf. Oatly AB v. D's Naturals LLC*, 2018 WL 3496386, at *4 (S.D. Ohio July 20, 2018) (finding counter-defendant sufficiently pled fraudulent intent where it was alleged that plaintiff knew its trademark application "would not have been accepted without that specific false declaration"). Accordingly, to the extent Counts II and III of Premier Imaging's Counterclaims are based on allegations of fraud, these claims are **DISMISSED WITH PREJUDICE**.

Although Premier Imaging may still proceed under its theory of abandonment, this applies only to Count II, as Count III (Invalidity of Pending Trademark Application) is not ripe for review. Indeed, it would belie logic to find that Lucid Health abandoned the use of a trademark it does not yet own. *See Citigroup Inc.*, 2003 WL 282202 at *17 ("Because it constitutes a forfeiture of a property right, abandonment of a mark must be proven by clear and convincing evidence[.]"). Hence, to the extent Count III of Premier Imaging's Counterclaims is predicated on abandonment, this claim is **DISMISSED WITHOUT PREJUDICE**.[2]

---

[1] It should also be noted that Lucid Health's pending application for registration of its "LUCID HEALTH" mark was not filed until January 2020, which was almost a year and six months after Premier Imaging's trademark application had already been rejected by the USPTO. Hence, Lucid Health's pending application could not have been filed for the purpose of preventing Premier Imaging from using its own mark.

[2] Alternatively, Premier Imaging asks the Court to stay Count III of the Counterclaims pending approval or denial of Lucid Health's trademark application. But given the uncertainty surrounding

### B. Whether Premier Imaging's Affirmative Defenses are Pled with Particularity

In its Answer to Lucid Health's Complaint, Premier Imaging raised five affirmative defenses, three of which Lucid Health now seeks to strike:

> **First Affirmative Defense** – The Complaint is barred in whole or in part on the grounds that Plaintiff has abandoned all rights in the LUCID HEALTH mark by prolonged non-use with no intent to resume use, and hence abandonment, of the LUCID HEALTH mark in connection with at least some of its identified services.[3]
>
> **Fourth Affirmative Defense** – One or more claims asserted by Plaintiff fail because the trademark registration is unenforceable as fraudulent, improper or invalid, and should be cancelled as a result thereof.
>
> **Fifth Affirmative Defense** – Plaintiff was not using its mark on all services recited in its application at the time the solicitation and renewals were filed with the USPTO. The Plaintiff made false statements in its original application and in its Combined Renewal Applications, including declarations filed in connection with Plaintiff's Section 8 and 15 and Section 8 and 9 declarations filed in support of its registration, which false statements were material, made knowingly, and made with an intent to deceive. The resulting registration is invalid and should therefore be cancelled.

Doc. 7 at 14. Lucid Health argues that these defenses should be stricken because they fail to comply with the *Twombly/Iqbal* pleading standard, otherwise fail to provide fair notice of the nature of these defenses, and fail to plead fraud with particularity.

The Court, upon motion or on its own, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike serve a useful purpose by eliminating insufficient defenses and saving the

---

when this decision will be made, coupled with concerns about disjointed proceedings, the Court **DENIES** this request. *See F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.").

[3] The Court will construe LUCID HEALTH, as used in this paragraph, to be a reference to the "LUCID HEALTH and Design" trademark, which is registered with the USPTO, not the "LUCID HEALTH" mark, which is currently pending before the USPTO.

time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *Joe Hand Promotions, Inc. v. Havens*, 2013 WL 3876176, at *1 (S.D. Ohio July 26, 2013) (internal quotations and citation omitted). This Court has previously held that affirmative defenses must comport with the *Twombly/Iqbal* pleading standard to survive dismissal. *See Doe v. Bd. of Educ. of Highland Local Sch. Dist.*, 2017 WL 3588727, at *2 (S.D. Ohio Aug. 21, 2017).

Here, Premier Imaging's Fourth and Fifth Affirmative Defenses are subject to dismissal for a failure to plead a cognizable defense of fraud. Like the fraud-based allegations in its Counterclaims, Premier Imaging's Fourth and Fifth Affirmative Defenses do not assert any facts from which the Court can reasonably infer that Lucid Health made material misrepresentations with the *intent to deceive* the USPTO. (Emphasis added). Nor does Premier Imaging set forth facts establishing a fraudulent scheme on the part of Lucid Health. Accordingly, the Court **STRIKES** Affirmative Defenses Four and Five.

The Court, however, will not strike Premier Imaging's First Affirmative Defense. As discussed above, Premier Imaging pled sufficient facts to sustain a claim for abandonment. It would be improper to permit a counterclaim for abandonment while striking an affirmative defense that is based on the same facts. *See id.* ("The Court should grant a motion to strike only when the pleading stricken has no possible relation to the controversy.") (internal quotations and citation omitted). Therefore, Premier Imaging's First Affirmative Defense survives dismissal.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Lucid Health's Partial Motion to Dismiss [#12].

**IT IS HEREBY ORDERED:**

(1) To the extent Counts II and III of Premier Imaging's Counterclaims are based on fraud, those claims are **DISMISSED WITH PREJUDICE.**

(2) Count III of Premier Imaging's Counterclaims, to the extent it is based on a theory of abandonment, is **DISMISSED WITHOUT PREJUDICE**.

(3) Premier Imaging's Fourth and Fifth Affirmative Defenses are **STRICKEN**.

**IT IS SO ORDERED.**

                                         **ALGENON L. MARBLEY**
                                         **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 24, 2020**